Kent, J.
Two cases have been decided in this court, which are applicable to the present. The case of Mumford v. Church, (see 1 Johns. Cas. 147, 151,) and the case of Slocum and Burling v. The United Insurance Company, in October term, 1799. Those cases determined these points. 1. That a taking and carrying into port of neutral property by a belligerent vessel authorized an abandonment. 2. That although restoration was made before, yet if not known until after the abandonment, it did not defeat the abandonment, *as parties could only act from the state of things as known to them. But the effect of a capture made by a friend, as contradistinguished from one made by an enemy, was not raised as a question in those •cases, but it seemed to be taken for granted that the capture, in either instance, was the same in respect to the right of the insured.
I consider it as well understood and settled, that a capture by a friend is one of the perils insured against. The words of the policy are sufficiently extensive, and parties must be governed by the usual and established meaning of the words unless some law or usage be produced to restrain their operation. In Goss v. Withers, (2 Burr. 696,) it was held that the insured might abandon in case of an arrest, or an embargo by a prince not an enemy; and in Saloucci v. Johnson, (reported in Park, 79,) the court held the insurer responsible for a capture by a friend. The same construction is given to the policy by the foreign treatises and writers. (Le Guidon, c. 7, s. 1. Valin, tom. 2, 76, 127, 134.) The words, “ capture and detention of princes,” apply not only to takings by enemies or pirates, but to those made by friends or allies; in one word, to all captures, just or unjust, made by hostility, piracy or otherwise.
The next point is, whether the loss justified the abandonment.
The general rule is, that the insured has a right to abandon immediately upon hearing of a detention, and his claim to indemnity is not suspended by the chance of a future recovery, because, by the abandonment, that chance devolves *264 upon the insurer.. This rule applies to all cases of foreign detention, whether that detention arise from necessity or in consequence of an embargo, or for the purpose of a judicial inquiry. In either case, the voyage is equally interrupted, and involved in similar uncertainty. Carrying into port denotes strong suspicion; it is good ground to calculate on a serious litigation ; *and it is prima facie evidence of total loss. In such cases the English laiv does not require a delay, in-imitation of some foreign rules. The activity of trade rather demands decision and certainty, and that the capital and business of the merchant should not be kept in suspense.
Are there any circumstances to exempt this case from the operation of the rule ? Here was not any warranty, or representation, as to the ownership of the property, and in that case the risk of the property, whether it be neutral or enemy’s property, i's to be borne by the insurer. This is the sense and understanding of the contract with us; and the omission of a warranty or representation leads to the conclusion that the property may not be neutral, and the insurer takes upon himself the risk of loss by capture, be the property whose it may. The practice we have gone into, of warranting, or representing the property to be neutral, can have no rational solution but upon this construction ; and the same construction prevails in the French law. (1 Emerigon, 460.) And although I think the more natural conclusion would have been, that every person making insurance was to be presumed, even without any warranty, to be the owner of the property insured, unless it was otherwise disclosed and declared; yet the prevailing sense is rather conformable to the language of the policy. The words are, that the insured, “ as well in his own name as for and in the name of every person to whom the same doth appertain, in part or in all, maketh assuranceand it was formerly the practice in England, until prevented by statute, in the year 1785, to effect policies in blank, without specifying the names of the persons for whose use the insurance was made.
In the present case, then, there could be no good reason *265 for delay. If the property was condemned as enemy’s property, the insurer would still have been responsible, *and there was no reason arising from the pendency of a judicial inquiry, why the abandonment should not have been made, as soon as intelligence of the capture and carrying into port had been received. Isay carrying into port, for I consider that act so decisive of an interruption of the voyage, and of uncertainty as to the result, that the insured is then authorized to abandon. Whether the insured, in cases of warranty, or representation of neutrality, would be obliged to wait the event of the capture and judicial inquiry, before he abandons, I give no opinion, because such a case is not before the court.
With respect to the act of the consignee, which was noticed upon the argument, I do not consider it as making any alteration in the rights of the plaintiff. It was held, in the case of Gardiner and others v. Smith, (1 Johns. Cas. 14,) July term, 1799, that after a total loss, the consignee becomes the agent of the insurer, and his acts enure to the benefit of the insurer, to whom he is amenable for any mala fid.es, in the execution of his trust.
No question was made upon the argument, as to the time of the abandonment. The notice of it was given upwards of six weeks after the restoration of the vessel, but without knowledge of such restoration. It may become a question whether, after a reasonable time, the assured ought not be charged with the knowledge of the restoration. Because of the difficulty of bringing home to the party, in many instances, the knowledge of the fact, the French ordinance of marine, article 39, (2 Valin, 94,) has fixed a precise standard to ascertain the circulation of intelligence, by an arbitrary ratio between the distance and the time. We have no such rule; and the presumption with us must depend upon the time and distance between the places in question, in reference to the ordinary channels, and the ordinary despatch of intelligence.
*If, however, the presumption would otherwise have arisen against the assured, yet in the present *266 case the fact being found that he had no knowledge of the release of the vessel, it repels all such presumption.
Upon every view of this case, I am of opinion that judgment ought to be for the defendant.
Lewis, J. was of the same opinion.
Lansing, Ch. J. and Radcliff, J. not having heard the argument, gave no opinion.
Judgment for the plaintiffs.(a)(b)

(a.) See notes to Mumford v. Church, sup. vol. 1, p. 151; and Slocum v. Burling, id.

(b) [Old note.] The same questions, as to capture and abandonment, have since arisen in several courts of the United States, and have been decided in the same manner. See Duthill v. Gatliff, in the supreme court of Pennsylvania, 1806, Dallas, 446 ; Rhinelander v. The Insurance Company of Pennsylvania, in the supreme court of the United States, 1807; 4 Cranch, 29, 46; Lee v. Boardman, in the supreme court of Massachusetts, 1807; 3 Tyng’s Mass. Rep. 238. See also 4 Tyng’s Mass. Rep. 221. But see Bainbridge v. Neilson, 10 East, 329. Church v. Bedient and others, and Peyton v. Hallett, 1 Caines’ Cases in Error, 21, 28.